UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KELLILEA F. | : |
| | : |
| v. | :    C.A. No. 21-00410-JJM |
| | : |
| KILOLO KIJAKAZI, Commissioner | : |
| Social Security Administration | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

    This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on October 13, 2021, seeking to reverse the Decision of the Commissioner. On March 18, 2022, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (ECF No. 11). On May 12, 2022, Defendant filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF No. 13). Plaintiff filed a Reply on May 26, 2022. (ECF No. 14).

    This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 13) be GRANTED.

I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSDI on November 1, 2019 (Tr. 172-173, 174-183) alleging disability since September 30, 2019.  The applications were denied initially on April 14, 2020 (Tr. 62-71, 72-81) and on reconsideration on May 18, 2020.  (Tr. 82-90, 91-99). Plaintiff requested an Administrative Hearing.  On January 7, 2021, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. 36-59).  The ALJ issued an unfavorable decision to Plaintiff on January 29, 2021.  (Tr. 9-30).  The Appeals Council denied Plaintiff's request for review on August 13, 2021.  (Tr. 1-3).  Therefore, the ALJ's decision became final.  A timely appeal was then filed with this Court.

II.   THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 3 in finding that she did not meet or equal any of the Listings, in failing to properly follow Social Security Ruling ("SSR") 18-3p regarding the failure to follow prescribed treatment and did not adequately account for the limitations related to her migraines and seizures.

The Commissioner disputes Plaintiff's claims and argues that the ALJ's Step 3 findings are supported by the record, that the ALJ properly considered Plaintiff's noncompliance with treatment, and properly considered the evidence related to Plaintiff's seizures and migraines.

III.  THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621

F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings

of fact.  Id.  The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must

nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is

represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the

national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

  E.  **Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the

"grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1.  Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In

determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

V.     APPLICATION AND ANALYSIS

A.     The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's epilepsy, migraines, depression and anxiety were "severe" impairments within the meaning of the applicable regulations. The ALJ found that none of Plaintiff's impairments met or equaled a Listing. As to RFC, the ALJ determined that Plaintiff could perform a full range of work exertionally, but subject to several enumerated non-exertional limitations. Based on this RFC and opinion testimony from the VE, the ALJ found that Plaintiff could not perform her past work but was not disabled because she could transition to other light, unskilled positions available in the economy.

B.     Plaintiff Has Shown No Step 3 Error

Plaintiff asserts that the ALJ erred in finding at Step 3 that she did not meet or equal any section of the Listing of Impairments. She relatedly argues that the ALJ failed to properly follow SSR 18-3p in considering the failure to follow prescribed treatment.

First, as to the SSR 18-3p argument, Plaintiff concedes that the interplay between the relevant Listing (11.02) and SSR 18-3p (Failure to Follow Prescribed Treatment) is "legally unclear." (ECF No. 11 at p. 13, n.4). Defendant counters that the legal predicate for Plaintiff's argument is "flawed" because SSR 18-3p does not apply. (ECF No. 13 at p. 12). Defendant accurately points out that SSR 18-3p is only triggered when the ALJ finds that the individual is

otherwise entitled to disability. SSR 18-3p "precludes an ALJ from denying a claim based on failure to follow prescribed treatment without finding that the claimant's ability to work would be restored if he were compliant." Payne v. Saul, No. 19-CV-1206-SCD, 2020 WL 4015609, *5 (E.D. Wisc. July 16, 2020). Here, the ALJ never made a disability finding, so the assessment under SSR 18-3p did not apply. Randa A. v. Kijakazi, No. 2:20-CV-00731-CMR, 2022 WL 860378 (D. Utah Mar. 23, 2022). In addition, Plaintiff did not counter Defendant's argument in her Reply Brief and, thus, it is effectively unopposed. Accordingly, Plaintiff has shown no violation of SSR 18-3p.[1]

Plaintiff next challenges the ALJ's Step 3 findings on Listings 11.02, 12.04 and 12.06. It is undisputed that Plaintiff bore the burden of showing that she satisfied the Listings' specific criteria. At the ALJ hearing, Plaintiff's counsel argued only that Plaintiff's "absence seizures" met Listing 11.02.[2] Here, there are no medical opinions of record opining that Plaintiff's impairments meet or equal the relevant Listings. To the contrary, the Listings were considered by the State Agency Reviewing Physicians and Psychologists, and they all found that Listings 11.02, 12.04 and 12.06 were not satisfied. (Tr. 66-68, 86-87 (Listing 11.02); and Tr. 65, 84-85 (Listings 12.04 and 12.06)).

Listing 11.02 requires a record of at least once weekly seizures over three consecutive months "despite adherence to prescribed treatment." Here, Plaintiff offers no showing as to the necessary frequency of seizures. As to medication compliance, the ALJ supportably found that

---

[1] Defendant accurately points out that the inapplicability of SSR 18-3p does not mean that noncompliance with treatment is irrelevant in this case. See Payne v. Saul, 2020 WL 4015609, *5 ("[SSR 18-3p] is not a gag rule precluding ALJs from considering lack of compliance in other scenarios [such as credibility and severity of symptoms]).”

[2] Plaintiff's counsel argues for the first time in the Reply Brief that the ALJ also erred by not finding that Plaintiff's migraines met Listing 11.02 and that the ALJ failed to properly follow SSR 19-4p (Evaluating Headache Disorders). (ECF No. 13 at pp. 2-3). Since these arguments were not raised in the primary Brief, they are not properly before the Court and are deemed waived arguments.

the record showed "inconsistent adherence to prescribed treatment" by Plaintiff. (Tr. 16). The ALJ outlines the medical history in detail (Tr. 20-27), and the record includes multiple entries documenting Plaintiff's history of noncompliance with prescribed seizure medication. (See ECF No. 13 at p. 6 (summarizing relevant medical record entries)).[3] The ALJ also accurately pointed out Plaintiff's history of missing appointments with her treating neurologist. (See, e.g., Tr. 22, 25). Finally, the ALJ reasonably considered that Plaintiff had given "several explanations" for not taking her medications and that "[t]he doctors have not supported [Plaintiff's] noncompliance nor have they indicated any validity for the reasons she has given for not taking it." (Tr. 25).

Plaintiff also challenges the ALJ's findings regarding Listings 12.04 and 12.06. Listings 12.04 (for depression) and 12.06 (for anxiety) require an extreme limitation of one, or a marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

Here, the ALJ properly found that Plaintiff had no more than mild and moderate limitations in these areas. (Tr. 16-18). This finding is directly supported by the uncontradicted assessments of two State Agency Psychologists. (Tr. 65, 84-85). See also 20 C.F.R. § 404.1513a(b)(1); see also Berrios Lopez v. Sec'y of HHS, 951 F.2d 427, 431 (1st Cir. 1991) (ALJs are allowed to rely on the findings of state agency reviewers). Also, the ALJ reasonably relied on the following evidence in reviewing each of the four mental functional areas. (Tr. 16-18).

---

[3] The ALJ also accurately observes that Plaintiff continued to drive against doctor's orders. (Tr. 26).

On "understanding, remembering and applying information," the ALJ accurately noted the following findings: For example, he considered that Plaintiff's treating providers have not expressed "significant concerns…relative to the claimant's ability to follow conversations, make her own medical decisions, or live independently." (Tr. 16). Mental status examinations showed "no evidence of gross mental disorder" (Tr. 16; Tr. 434, 713, 758, 774, 777) and "no indication of issues with understanding, remembering or applying information". (Tr. 16; Tr. 265, 451, 713). Plaintiff is the "caretaker of three children," (Tr. 16; Tr. 261, 280, 711) and her treatment remained "conservative." (Tr. 16; Tr. 714 "She is not currently in counseling and has not been in counseling since she was 17.").

Although doctors occasionally directed office staff to help Plaintiff schedule a mental health appointment (ECF No. 11 at p. 15), there is no indication that they had "significant concerns" about her ability "to follow conversations, make her own medical decisions, or live independently." (Tr. 17). Moreover, the record shows that Plaintiff's failure to see a mental health specialist had more to do with noncompliance than anything else (see Tr. 385, "she did not go see a psychiatrist…she did not like seeing psychology"); (Tr. 396, "Pt does not like seeing psychologist as referred by her PCP").

On "interacting with others," the ALJ reasonably noted that, except for one emergency department visit (Tr. 957), Plaintiff interacted properly with her medical providers (Tr. 713, "easy rapport was established"); (Tr. 710, 1012, "cooperative"). She had "no present involvement with law enforcement" (Tr. 16; Tr. 712), interacted with family members and "denied problems getting along with family, friends, neighbors, others, or authority figures". (Tr. 17; Tr. 266, 283, 285, 713). Also, in the consultative psychological examination, Plaintiff showed "normal speech, intact judgment, and appropriate mood and affect." (Tr. 17; Tr. 713).

Plaintiff also claims that the ALJ improperly relied on Dr. Schwartz's findings because she did not consider "three combative ER visits" or conduct "any detailed testing." (ECF No. 11, p. 17). But Dr. Schwartz did conduct a detailed mental status examination (Tr. 713), which is significant since Plaintiff had no specialized mental health treatment at all in the entire period at issue. The ALJ was entitled to rely on the consultative examination, especially here where that examination was reviewed by two State Agency Psychologists who found that it supported no more than moderate limitations. (Tr. 65-66, 84-85).

On "concentrating, persisting or maintaining pace," the ALJ appropriately noted, among other things, that there were "no significant deficits of concentration, attention or focus were noted on mental status examinations." (Tr. 17; Tr. 713, 841). Plaintiff regularly went to medical appointments, and her daily activities included caring for three children (Tr. 261, 280, 711), cooking, cleaning, doing laundry and managing money. (Tr. 712, "independent in her cooking and cleaning and shopping"); (Tr. 262-263).

On "adapting or managing oneself," the ALJ accurately noted that Plaintiff can maintain her personal care and hygiene. (Tr. 17; Tr. 710, "[h]ygiene appeared to be good"). She has not required psychiatric hospitalizations or treated with a psychiatrist or psychologists in the period at issue. (Tr. 714, "She is not currently in counseling and has not been in counseling since she was 17"). Mental status examinations have been generally benign (Tr. 434, 713, 758, 774, 777), and she scored 29/30 on a Mini-mental Status Exam. (Tr. 713). Plaintiff was also able to care for three children (Tr. 261, 280, 711), and providers have not expressed concern over her ability to care for herself or her children.

In short, the ALJ's findings on Listings 12.04 and 12.06 are supported by the record and the findings of the State Agency Psychologists. In contrast, Plaintiff (who has the burden at

Step 3) points to no medical source who has found that her impairments meet or equal the relevant Listings. Thus, the Court must affirm the ALJ's Step 3 finding because it is supported by substantial evidence and because Plaintiff did not meet her burden of proof.

### C. The ALJ Properly Considered the Evidence Related to Plaintiff's Seizures and Migraines

Plaintiff makes three arguments regarding the ALJ's alleged failure to properly account for the limitations attributable to her migraines and seizures. None of these arguments support a remand. First, Plaintiff argues that the ALJ misrepresented her testimony about forgetting to take her epilepsy medications (ECF No. 11 at p. 22) but a fair reading of Plaintiff's testimony shows that the ALJ did not do that. The ALJ wrote: "In the beginning when she was first diagnosed, her memory made her forgot [sic] whether or not she had taken the medications." (Tr. 19). And Plaintiff testified: "In the beginning, when I first came down, like, with the epilepsy, when they gave me medicine, it did take me time to, like, get on track. I had to set alarms to remind me [ ] because of, like, my memory, I forget, and then I'll be like, oh, I don't know if I took it. So now I have to set alarms." (Tr. 47). The ALJ here properly addressed the issue in a manner consistent with the record.

Second, Plaintiff claims that the ALJ's subjective symptom evaluation is "flawed" because the ALJ noted that she had reported no further "epileptic spells" in December 2019. (ECF No. 11 at p. 23; Tr. 21). However, the ALJ's notation is an accurate representation of the record. (See Tr. 819, "Kelly had no further clinical epileptic spells."). The ALJ did not find that there were no further epileptic events after that date, only that as of December 23, 2019 Plaintiff had not suffered any since her seizures in October. (Tr. 21). Indeed, the ALJ went on to recount Plaintiff's subsequent epileptic seizures in his decision. (Tr. 22-23).

Third, Plaintiff turns to her migraines and argues that Sacilowski v. Saul, 959 F.3d 431 (1st Cir. 2020) is "directly on point" and required the ALJ to find that she would have been off task and absent from work to the point that she was disabled. (ECF No. 11 at pp. 23-24). Plaintiff is mistaken. Sacilowski involved a treating physician opinion finding that the claimant would miss workdays due to her migraines. Sacilowski, 959 F.3d at 439 (discussing Dr. Wilson's opinions, including the opinion that the claimant would miss more than four workdays per month). Here, Plaintiff does not point to any opinion finding that she would miss work or be off task in a way that conflicts with the ALJ's RFC finding and would support her burden of proof.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 13) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 14, 2022